1  MATTHEW A. HODEL (SB# 93962)
   Email: mhodel@hodelwilks.com
2  FRED L. WILKS (SB# 205403)
   Email: fwilks@hodelwilks.com
3  HODEL WILKS LLP
   4 Park Plaza, Suite 640
4  Irvine, California  92614
   Telephone: (949) 450-4470
5
   Attorneys for Defendant
6  and Counterclaimant
   DDRM HILLTOP PLAZA L.P.
7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11 FITNESS INTERNATIONAL, LLC,        CASE NO. 8:21-cv-00142 CJC (ADSx)
   a California limited liability company,
12                                     Assigned to the Hon. Cormac J. Carney
                Plaintiff,
13                                     **DEFENDANT AND
        vs.                            COUNTERCLAIMANT'S NOTICE
14                                     OF MOTION AND MOTION FOR
   DDRM HILLTOP PLAZA L.P., a          SUMMARY JUDGMENT;
15 Delaware limited partnership; DOES  MEMORANDUM OF POINTS AND
   1-10, inclusive,                    AUTHORITIES**
16
                Defendants.
17
                                       Hearing Information
18 ─────────────────────────────       Date:      October 18, 2021
   DDRM HILLTOP PLAZA L.P., a          Time:      1:30 p.m.
19 Delaware limited partnership,       Courtroom: 9B

20              Counterclaimant,

21      vs.

22 FITNESS INTERNATIONAL, LLC,         Complaint Filed: December 18, 2020
   a California limited liability company,
23                                     Discovery Cut-Off:   August 5, 2021
                Counter-Defendant.     Pretrial Conference: December 6, 2021
24                                     Trial Date:          December 14, 2021

25

26

27

28

─────────────────────────────────────────────────────────
        DEFENDANT AND COUNTER-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 18, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Cormac J. Carney of the United States District Court for the Central District of California, 411 West 4th Street, Santa Ana, California, 92701, Courtroom 9B, defendant and counterclaimant DDRM Hilltop Plaza L.P. ("Landlord") will and does hereby move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as follows:

(1)　for summary judgment in favor of Landlord on its single counterclaim for breach of contract. The undisputed facts demonstrate that the essential elements of Landlord's counterclaim are established, and all of the affirmative defenses asserted by plaintiff and counter-defendant Fitness International, LLC ("Tenant") fail as a matter of law; and

(2)　for summary judgment in favor of Landlord on Tenant's single claim for relief, declaratory relief. The undisputed facts demonstrate that Tenant is not entitled to the declaratory relief it seeks as a matter of law.

Alternatively, if the Court finds that a genuine issue of material fact exists, Landlord hereby moves for partial summary judgment as follows:

(3)　for partial summary judgment in favor of Landlord on its breach of contract counterclaim; and

(4)　for partial summary judgment as to all of Tenant's affirmative defenses that are amenable to adjudication; and

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Separate Statement of Undisputed Facts, and the Declarations of Phil Salem and Fred L. Wilks, along with supporting exhibits, filed concurrently herewith; the pleadings, records and files in this action; and such other matters as may be presented to the Court.

/ / /

/ / /

1    This motion is made following the conference of counsel pursuant to

2    L.R. 7-3 which occurred on several occasions, most recently on August 12, 2021.

3

4    DATED: September 20, 2021          HODEL WILKS LLP

5                                       By:_____/s/ FRED L. WILKS_____
                                             FRED L. WILKS

6

7                                       Attorneys for Defendant and Counterclaimant
                                        DDRM HILLTOP PLAZA L.P.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AND COUNTER-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................... 1

II.  SUMMARY OF UNDISPUTED FACTS ................................... 3

     A.   The Parties' Lease ........................................................ 3

     B.   Tenant's Failure to Pay the Rent Due Under the Lease............... 5

     C.   Tenant Remained in Possession of the Premises at All Times..... 6

     D.   The Parties' Claims ..................................................... 7

III. LEGAL STANDARD .............................................................. 7

IV.  LANDLORD IS ENTITLED TO JUDGMENT AS A MATTER OF
     LAW ON BOTH PARTIES' CLAIMS .................................... 8

     A.   The Undisputed Facts Establish that Tenant Breached the
          Lease by Failing to Pay Rent ........................................ 8

     B.   Tenant's Affirmative Defenses Fail as a Matter of Law ............. 9

          1.   Landlord Did Not Fail to Perform under the Lease.......... 9

          2.   Payment of Rent Is Not Excused by the Force Majeure
               Clause in the Lease ........................................... 10

          3.   Payment of Rent Is Not Excused by Frustration of
               Purpose....................................................... 12

          4.   Payment of Rent Was Not Impossible or Impracticable ... 15

          5.   California Civil Code Section 1511(1) Does Not Apply
               Because Payment of Rent Was Not Prevented by
               "Operation of Law"........................................... 18

          6.   Payment of Rent is Not Excused Due to Failure of
               Consideration ................................................. 19

          7.   There Has Been No Government "Taking"................... 21

     C.   Tenant's Affirmative Claim for Declaratory Relief Fails........... 22

          1.   The Declaratory Relief Claim Relates Only to Past
               Events......................................................... 22

          2.   Tenant's Declaratory Relief Claim Fails on the Merits for
               All of the Same Reasons Its Affirmative Defenses Fail.... 24

V.   CONCLUSION ................................................................... 25

i

1

## TABLE OF AUTHORITIES

2

**STATE CASES**                                                    **PAGE(S)**

3

4

20th Century Lites, Inc. v. Goodman,
    64 Cal. App. 2d Supp. 938 (1944) ................................................. 14

5

111 Fulton Street Investors, LLC v. Fulton Quality Foods LLC,
    2021 WL 408238 (N.Y. Sup. Ct. Feb. 05, 2021) ...................... 21

6

7

1600 Walnut Corp. v. Cole Haan Co. Store,
    2021 WL 1193100 (E.D. Pa. Mar. 30, 2021) ............................ 21

8

Ayse Sen v. Amazon.com, Inc.,
    2013 WL 6730180 (S.D. Cal. Dec. 19, 2013) ........................... 19

9

10

Babb v. Superior Court,
    3 Cal. 3d 841 (1971) ..................................................................... 22

11

Baldwin v. Marina City Properties, Inc.,
    79 Cal. App. 3d 393 (1978) ......................................................... 22

12

13

BKNY1, Inc. v. 132 Capulet Holdings, LLC,
    2020 WL 5745631 (Sup. Ct., Kings County 2020) ................... 13

14

Cab Bedford LLC v. Equinox Bedford Ave, Inc.,
    2020 WL 7629593 (N.Y. Sup. Ct. Dec. 22, 2020) ................... 12, 13, 20

15

16

Caron v. Andrew,
    133 Cal. App. 2d 402 (1955) ...................................................... 16, 18

17

C.J.L. Constr., Inc. v. Universal Plumbing,
    18 Cal. App. 4th 376 (1993) ........................................................ 23

18

19

Dorn v. Goetz,
    85 Cal. App. 2d 407 (1948) ......................................................... 12

20

Feldmeier v. Mortg. Sec., Inc.,
    34 Cal. App. 2d 201 (1939) ......................................................... 20

21

22

Friends of Danny DeVito v. Wolf,
    227 A. 3d 872 (Pa. 2020) ............................................................ 21

23

Gafcon, Inc. v. Ponsor & Assocs.,
    98 Cal. App. 4th 1388 (2002) ..................................................... 22, 23, 24

24

25

Gap Inc. v. Ponte Gadea New York LLC,
    2021 WL 861121 (S.D. N.Y. Mar. 8, 2021) .............................. 13, 20

26

Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.,
    66 Cal. App. 3d 101 (1977) ......................................................... 16

27

28

i

**STATE CASES (Continued)**                                    **PAGE(S)**

Glenn R. Sewell Sheet Metal, Inc. v. Loverde,
    70 Cal. 2d 666 (1969) ................................................................ 15

Greater New York Auto. Dealers Assn. Inc. v. City Spec, LLC,
    136 N.Y.S. 3d 695 (N.Y. Civ. Ct. 2020) ..................................... 13

Hebrank v. Linmar Mgmt., Inc.,
    2014 WL 3741634 (S.D. Cal. July 29, 2014) ............................... 16

Hensler v. Los Angeles,
    124 Cal. App. 2d 71 (1964) ......................................................... 16

Holguin v. Dish Network LLC,
    229 Cal. App. 4th 1310 (2014) .................................................... 25

Johnson v. Atkins,
    53 Cal. App. 2d 430 (1942) ......................................................... 14

Kashmiri v. Regents of the University of California,
    156 Cal. App. 4th 809 (2007) ................................................. 15, 16

Kowal v. Day,
    20 Cal. App. 3d 720 (1971) ......................................................... 19

Lloyd v. Murphy,
    25 Cal. 2d 48 (1944) .............................................................. 12, 19

Min. Park Land Co. v. Howard,
    172 Cal. 289 (1916) ..................................................................... 17

Oasis West Realty LLC v. Goldman,
    51 Cal. 4th 811 (2011) ................................................................... 8

Oosten v. Hay Haulers Dairy Emp. & Helpers Union,
    45 Cal. 2d 784 (1955) ............................................................. 11, 17

Riverside Water Co. v. Jurupa Ditch Co.,
    187 Cal. App. 2d 538 (1960) ....................................................... 19

Schumm by Whyner v. Berg,
    37 Cal. 2d 174 (1951) .................................................................. 19

Seamen v. Valley Health Care Med. Grp., Inc.,
    2015 WL 9093593 (C.D. Cal. Dec. 16, 2015) ............................ 16

Series AGI W. Linn of Appian Grp. Invs. DE, LLC v. Eves,
    217 Cal. App. 4th 156 (2013) ................................................. 24, 25

Standard Brands of California v. Bryce,
    1 Cal. 2d 718 (1934) .................................................................... 23

**STATE CASES (Continued)**                                            **PAGE(S)**

Stone v. Burke,
    110 Cal. App. 2d 748 (1952) ........................................................   20

Travers v. Louden,
    254 Cal. App. 2d 926 (1967) ........................................................   22

Vickerson v. Frey,
    100 Cal. App. 2d 621 (1950) ........................................................   17

Welfare Investment Co. v. Stowell,
    132 Cal. App. 275 (1933) ............................................................   23

**FEDERAL CASES**                                                    **PAGES(S)**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ....................................................................   8

Andrew Smith Co. v. Paul's Pak, Inc.,
    754 F. Supp. 2d 1120 (N.D. Cal. 2010)........................................   20

Bay Area Roofers Health v. Sun Life Assur. Co.,
    73 F. Supp. 3d 1154 (N.D. Cal. 2014)..........................................   7

Bayer v. Neiman Marcus Group, Inc.,
    861 F. 3d 853 (9th Cir. 2017) ......................................................   23

Berg v. Kincheloe,
    794 F. 2d 457 (9th Cir. 1986) ......................................................   8

Britz Fertilizers, Inc. v. Bayer Corp.,
    665 F. Supp. 2d 1142 (E.D. Cal. 2009) ........................................   22

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ....................................................................   7

Continental Oil Co. v. United States,
    184 F. 2d 802 (9th Cir. 1950) ......................................................   12

Fazio v. City & Cnty. of San Francisco,
    125 F. 3d 1328 (9th Cir. 1997)....................................................   8

Hong Kong Islands Line Am. S.A. v. Distribution Servs. Ltd.,
    795 F. Supp. 983 (C.D. Cal. 1991)
    aff'd, 963 F. 2d 378 (9th Cir. 1992)............................................   11

Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.,
    582 F. 3d 721 (7th Cir. 2009)......................................................   16

In Re: CEC Entertainment, Inc. et al.,
    2020 WL 7356380 (Bankr. S.D. Tex. Dec. 14, 2020).............. 10, 14, 15, 17

**FEDERAL CASES (Continued)**                                    **PAGES(S)**

Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.,
    51 F. Supp. 3d 937 (E.D. Cal. 2014) .......................................... 22

Rhoades v. Avon Prod., Inc.,
    504 F. 3d 1151 (9th Cir. 2007) ..................................................... 23

S.E.C. v. Seaboard Corp.,
    677 F. 2d 1301 (9th Cir. 1982) ..................................................... 8

Stone Brewing Co., LLC v. MillerCoors LLC,
    445 F. Supp. 3d 1113 (S.D. Cal. 2020) ........................................ 23

Store SPE LA Fitness 2013-7, LLC v. Fitness Int'l, LLC, et al.,
    2020 WL 8116171 (C.D. Cal. Dec. 9, 2020)............................... 24

Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al.,
    2021 WL 3285036 (C.D. Cal. June 30, 2021)........................... *passim*

**STATUTES AND RULES**                                          **PAGE(S)**

California Civil Code § 1511.................................................... 19

California Civil Code § 1511(1)............................................. 2, 18

California Civil Code § 1511(2)............................................. 15, 19

California Civil Code § 1597.................................................. 15

California Civil Code § 1605.................................................. 19

Federal Rule of Civil Procedure 56 ......................................... 1, 7

Federal Rule of Civil Procedure 56(a).................................... 7

iv

I.     **INTRODUCTION**

Defendant and counter-complainant DDRM Hilltop Plaza, L.P. ("Landlord") respectfully moves for an order, pursuant to Federal Rule of Civil Procedure 56, granting summary judgment in favor of Landlord on (1) its single counterclaim for breach of contract, and (2) the single surviving claim for declaratory relief asserted by plaintiff and counter-defendant Fitness International, LLC ("Tenant").

This case presents the following issue: does the issuance of government orders requiring Tenant to temporarily cease operating its business excuse Tenant from paying rent to Landlord while allowing Tenant to remain in possession of the leased premises and preserve all rights under its long-term lease? The answer is no, regardless of the reason the government issued those orders – including orders issued in response to COVID-19.

Tenant operates a nationwide chain of more than 700 fitness centers under well-known trade names such as LA Fitness and City Sports Club. It operates a fitness center in Richmond, California on premises leased from Landlord. The parties' written lease is a comprehensive, 70-page, single-spaced document. It provides for a 15-year term and three successive five-year options to extend the term to 2049. It includes a "Force Majeure" clause that expressly *excludes* excusing failures to perform "which can be cured by the payment of money." (See Compendium of Exhibits, Ex. A at § 22.3.) Obviously, Tenant's failure to pay rent can be cured by the payment of money. The Force Majeure clause does not excuse the payment of rent.

Nonetheless, in April 2020, Tenant unilaterally stopped paying rent. Tenant expressly stated, and alleges in this case, that it stopped paying rent due to government restrictions placed on the operation of fitness centers due to COVID-19. Tenant has never asserted any other justification for refusing to pay rent. There is no other underlying dispute. In fact, Tenant's decision to stop paying rent and preemptively sue Landlord is part of its overall corporate strategy for responding to

1

COVID-19. In California alone, in nearly 40 other lawsuits, Tenant has sought to avoid paying rent based on the very same theories it asserts here.

In one of those cases pending in the Central District, the Honorable James V. Selna has already granted summary judgment against Tenant on the very same theories asserted by Tenant here. See Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al., Case No. SACV 20-953 JVS (ADSx), 2021 WL 3285036 (C.D. Cal. June 30, 2021). This action too is amenable to summary judgment against Tenant.

There is no dispute that, because Tenant stopped paying rent, Landlord has a valid prima facie claim for breach of the lease. The only issue is whether any of Tenant's affirmative defenses related to COVID-19 excuse its payment of rent. For the reasons set forth below, Tenant's defenses all fail.

For instance, Tenant asserts that it was excused from paying the rent because it was impossible or impracticable to do so. As Tenant admits, however, it had the financial ability to pay rent during the closure periods. (Statement of Undisputed Facts ("SUF"), ¶ 15.) It had cash on hand far beyond what it needs to pay the rent, and generated revenue in 2020 that dwarfed the amount of rent Tenant is refusing to pay. (See Ex. M at FITNESS/DDRM 00461 referring to "Cash and cash equivalents.") In fact, Tenant continued to pay some of its other landlords in California during the same closure periods. (Exs. J and K.)

Tenant asserts that the purpose of the Lease has been "frustrated." But Tenant cannot show, as it must, that the value of the Lease has been destroyed. Tenant remained in possession of the Premises, left its equipment and infrastructure in place so that it could quickly resume operations (which it has now done), and has the right to exclusive use of the Premises until 2049. The Lease remains valuable.

Tenant also asserts that it is excused from paying rent pursuant to California Civil Code section 1511(1), because it was prevented from paying the rent "by operation of law." This defense is nonsense. There is no law, order or restriction prohibiting Tenant from paying rent.

Tenant fares no better on its declaratory relief claim. That claim is merely an alternative means of asserting the very same affirmative defenses discussed above. The claim does not seek *prospective* relief, is a mirror image of Landlord's breach of lease claim and is therefore duplicative and superfluous.

Accordingly, Landlord respectfully requests that the Court grant summary judgment in favor of Landlord on both parties' claims, in their entirety. Alternatively, if the Court determines that there is a genuine issue of material fact that prevents judgment on all issues, Landlord respectfully requests that the Court grant partial summary judgment as to all issues that are amenable to adjudication.

## II.    SUMMARY OF UNDISPUTED FACTS

### A.    The Parties' Lease

Tenant and Landlord are parties to a valid and binding Retail Lease dated June 9, 2017 (the "Lease"), pursuant to which Tenant leased approximately 39,122 square feet of shopping center retail space, located at 4100 Klose Way, Richmond, California 94806 (the "Premises") in a shopping center known as Hilltop Plaza. (SUF, ¶ 1.) The Lease is a detailed, 70-page, single-spaced document (with nearly 200 pages of exhibits) entered into between highly sophisticated parties.

The Lease Term: The Lease establishes a term of fifteen (15) years following the "Rent Commencement Date," with three separate five-year options to extend the term. (Ex. A at §§ 1.4, 4.2.) The Rent Commencement Date, as reflected by the parties' agreement executed pursuant to Section 4.1 of the Lease, was February 8, 2019. (SUF, ¶ 3.) That means the primary term under the Lease expires on February 28, 2034. (Id.) Adding the three five-year options to extend the term, Tenant may elect to remain in possession of the Premises for another 28 years, until 2049. (SUF, ¶ 4.)

The Rent: The Lease obligates Tenant to pay the "Rent," defined to include "Minimum Rent" and all "Additional Rent." Tenant must pay Rent when due "without demand, deductions, set-offs or counterclaims." (Ex. A at § 5.3.) Through

3

the first five years of the Lease term, Tenant must pay Minimum Rent in equal monthly installments of $61,128.13 (Ex. A at § 1.7), and Tenant must make payment "in advance, on the first (1st) day of each calendar month." (Ex. A at § 5.1.)

Additional Rent owed under the Lease consists of all other "sums of money … payable by Tenant to Landlord pursuant to this Lease … including, without limitation, late charges, default interest charges, Common Area Expenses and the cost of maintenance, repair, insurance and Taxes …." (Ex. A at § 5.3.) Thus, Additional Rent includes: late charges equal to three percent (3%) of the amount of any overdue payment(s) (Ex. A at § 5.5); interest on any late payment(s) (Ex. A at § 5.5); Tenant's share of real estate taxes and assessments (Ex. A at §§ 6.1, 6.2); Tenant's share of Common Area Expenses (Ex. A at § 11.2), defined to include costs and expenses reasonably incurred by Landlord in operating, maintaining, managing and repairing the "Common Areas" of the shopping center (Ex. A at § 11.1); and Tenant's share of insurance costs. (Ex. A at § 13.6.)

Force Majeure Events:  The Lease expressly states that "Landlord shall not be deemed to be a partner of Tenant or a joint venturer with Tenant." (Ex. A at § 22.20.) Landlord does not share in Tenant's profits, and it does not share in Tenant's losses. The Lease specifically addresses the potential of unforeseen "Force Majeure" events by excluding any failure to perform which can be cured by the payment of money:

> If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of strikes, lockouts … restrictive laws … or other casualty or other reason of similar or dissimilar nature beyond the reasonable control of the party delayed, *financial inability excepted* (each, a "Force Majeure Event") … performance of *such act* shall be excused for the period of delay *caused by* the Force Majeure Event and the *period for performance of*

4

1           *such act shall be extended for an equivalent period …. Delays or*

2           *failures to perform resulting from lack of funds or which can be cured*

3           *by the payment of money shall not be Force Majeure Events*.

4 (Ex. A at § 22.3, emphasis added.) The only "act" required by the Lease that

5 Landlord contends Tenant failed to perform is its obligation to pay Rent.

6         **B.**     **Tenant's Failure to Pay the Rent Due Under the Lease**

7       On March 17, 2020, Tenant informed Landlord that, in light of the COVID-

8 19 pandemic, Tenant had closed its health clubs due to certain "restrictive laws"

9 and Tenant's concern for its gym members, employees and staff. (SUF, ¶ 5.) Tenant

10 asserted that it had the right to "fully abate rent" for the remainder of the closure

11 period. (Ex. D.) Thereafter, Tenant failed to pay the Rent due on April 1, 2020, and

12 for each of the following months through September 2020. (SUF, ¶ 6.) On April 25,

13 2020, and then again on June 15, 2020, Landlord sent Tenant notices of default for

14 failure to pay Rent. (SUF, ¶¶ 7, 8.)

15       Tenant paid the Minimum Rent for October and November 2020, but again

16 refused to pay Rent for the period from December 2020 through February 2021.

17 (SUF, ¶ 9.) Thus, on November 17, 2020, and again on December 4, 2020,

18 Landlord sent Tenant additional notices of default. (SUF, ¶¶ 10, 11.)

19       In March 2021, government restrictions prohibiting the operation of fitness

20 centers were lifted. (SUF, ¶ 16.) On March 14, 2021, Tenant resumed operating its

21 fitness center on the Premises and has remained open since that time. (SUF, ¶ 17.)

22 On March 23, 2021, Tenant paid partial rent for March 2021, and has continued to

23 pay rent for the periods thereafter. (SUF, ¶ 18.)

24       But Tenant has not paid Rent for the periods during which it closed. As of

25 August 31, 2021, the total amount of Rent due and owing by Tenant under the

26 Lease is <u>$796,525.47</u>. (SUF, ¶ 19.)

27 / / /

28 / / /

### C.    Tenant Remained in Possession of the Premises at All Times

After Tenant notified Landlord that it was closing its fitness center and stopped paying the Rent, Tenant did not return possession of the Premises to Landlord. (SUF, ¶ 12.) Tenant did not attempt to terminate the Lease. (SUF, ¶ 13.) Tenant does not want to terminate the Lease. (Ex. P at 105:18-106:8.) Rather than terminate the Lease and move out, Tenant left all of its gym equipment, furniture, computers and other infrastructure in place so that it would be ready to resume operations when the closure orders were lifted. (Ex. P at 107:3-17.)

Meanwhile, Tenant admits that it had the financial ability to pay the Rent during the closure periods. (SUF, ¶ 15.) The amount of "cash and cash equivalents" Tenant has had available dwarfs the amount of unpaid Rent. (Ex. M at FITNESS/DDRM 00461.) Moreover, Tenant operates more than 700 clubs in 27 states. (Ex. M at FITNESS/DDRM 00467.) It is very likely that Tenant was able to open its fitness centers much earlier in other jurisdictions, generating revenue. But there is no need to speculate on that point because Tenant's financial statements reveal that the amount of revenue Tenant generated in 2020 easily covers the unpaid Rent many times over. (Ex. M at FITNESS/DDRM 00463.) In fact, during the closure periods, Tenant continued to pay rent to some of its other landlords in California. (Exs. J and K; Ex. P at 68:17-20, 70:2471:4, 86:23-87:12, 88:5-15.) Tenant simply chose not to pay this Landlord.

At all relevant times, Landlord has performed its obligations under the Lease (SUF, ¶ 14) by allowing Tenant to remain in possession of the Premises, continuing to maintain the common areas of the shopping center, paying taxes and complying with all other obligations it owes under the Lease. (Declaration of Phil Salem ("Salem Decl."), ¶ 10.) Indeed, as discussed above, on March 14, 2021, Tenant resumed operating its fitness center on the Premises and has remained open since that time. (SUF, ¶ 17.)

/ / /

1    **D.    The Parties' Claims**

2          On December 18, 2020, Tenant filed this lawsuit against Landlord, as it has

3    done to nearly 40 other landlords in California, alleging that as a result of the

4    government restrictions related to COVID-19, Landlord was in breach of the Lease,

5    thus entitling Tenant to an abatement of Rent owed for the closure periods.

6    (Complaint, ECF No. 1-3.) Tenant asserted claims for (1) breach of contract, (2)

7    monies had and received, (3) monies paid by mistake, and (4) declaratory relief.

8    (Id.) On February 25, 2021, the Court granted Landlord's motion to dismiss the first

9    three claims for relief without leave to amend, ruling that the Lease did not

10   guarantee Tenant would be free from government restrictions. (ECF No. 23.) Thus,

11   Tenant's only surviving claim for relief is its claim for declaratory relief, pursuant

12   to which it seeks a ruling that it is not obligated to pay the Rent for the closure

13   periods.

14         On March 10, 2021, Landlord filed a counterclaim against Tenant for breach

15   of contract to recover the unpaid Rent. (ECF No. 25, ¶¶ 126-141.)

16   **III.    LEGAL STANDARD**

17         Federal Rule of Civil Procedure 56(a) provides that the Court "shall grant

18   summary judgment if the movant shows that there is no genuine dispute as to any

19   material fact and the movant is entitled to judgment as a matter of law." In addition,

20   "[p]artial summary judgment that falls short of a final determination, even of a

21   single claim, is authorized by Rule 56 in order to limit the issues to be tried." Bay

22   Area Roofers Health v. Sun Life Assur. Co., 73 F.Supp.3d 1154, 1160 (N.D. Cal.

23   2014).

24         Rule 56 mandates summary judgment "against a party who fails to make a

25   showing sufficient to establish the existence of an element essential to that party's

26   case, and on which that party will bear the burden of proof at trial." Celotex Corp.

27   v. Catrett, 477 U.S. 317, 322 (1986). "A material issue of fact is one that affects the

28   outcome of the litigation and requires a trial to resolve the parties' differing

7

1    versions of the truth." <u>S.E.C. v. Seaboard Corp.</u>, 677 F.2d 1301, 1306 (9th Cir.

2    1982). The opposing party's evidence is to be believed, and all justifiable

3    inferences are to be drawn in its favor. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477

4    U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party

5    cannot rest solely on conclusory allegations. <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459

6    (9th Cir. 1986). Instead, the opposing party must designate specific facts showing

7    there is a genuine issue for trial. <u>Id.</u> A "mere 'scintilla' of evidence will be

8    insufficient to defeat a properly supported motion for summary judgment; instead,

9    the nonmoving party must introduce some 'significant probative evidence tending

10    to support the complaint.'" <u>Fazio v. City & Cnty. Of San Francisco</u>, 125 F.3d 1328,

11    1331 (9th Cir. 1997), quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.

## IV.  <u>LANDLORD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BOTH PARTIES' CLAIMS</u>

### A.  The Undisputed Facts Establish that Tenant Breached the Lease by Failing to Pay Rent

16    Under California law, "the elements of a cause of action for breach of

17    contract are (1) the existence of the contract, (2) plaintiff's performance or excuse

18    for nonperformance, (3) defendant's breach, and (4) the resulting damages to the

19    plaintiff." <u>Oasis West Realty LLC v. Goldman</u>, 51 Cal.4th 811, 821 (2011). Here,

20    Landlord's prima facie counterclaim for breach of contract is simple:  Tenant failed

21    to pay the Rent.

22    The Lease constitutes a valid and binding contract. (SUF, ¶ 1.) Landlord has

23    performed its obligations under the Lease. (SUF, ¶ 14.) Tenant breached the Lease

24    by failing and refusing to pay the Rent. (SUF, ¶¶ 6, 9.) And Landlord has suffered

25    damages because, as of August 31, 2021, the total amount of Rent due and owing

26    under the Lease is <u>$796,525.47</u>. (SUF, ¶ 19.) Unless Tenant can prevail on its

27    affirmative defenses, Landlord is entitled to judgment in its favor in the amount of

28    <u>$796,525.47</u>.

**B.      Tenant's Affirmative Defenses Fail as a Matter of Law**

Tenant has only offered one excuse for failing to pay the Rent: "Tenant placed Landlord on notice that Tenant's obligation to pay Rent during the Closure Periods was excused and/or abated … due to the government-mandated closures resulting from COVID-19 …." (<u>See</u> Complaint, ¶ 48.) For the reasons discussed below, government closure orders do not excuse payment of Rent.

**1.      Landlord Did Not Fail to Perform under the Lease**

Tenant asserts various affirmative defenses based on allegations that Landlord failed to honor the Lease or breached the Lease, including: Landlord failed to perform (<u>3rd affirmative defense</u>); Landlord failed to act (<u>11th affirmative defense</u>); the non-occurrence of conditions precedent (<u>16th affirmative defense</u>); material breaches by Landlord (<u>21st affirmative defense</u>); and Landlord was "unable to deliver" the Premises (<u>35th affirmative defense</u>). (<u>See</u> Answer to Counterclaims, ECF No. 30, pp. 3-8.) As this Court has already ruled, however, the issuance of closure orders by state and local officials in response to COVID-19 did not constitute a breach of the Lease by Landlord. (Order Granting Motions to Dismiss, ECF No. 23, pp. 4-9.)

Specifically, the Court ruled that "the Lease does not 'contain an obligation for [Defendant] to ensure that the government does not establish regulations prohibiting the operation of Plaintiff's business'" (ECF No. 23, p. 4); Tenant "fails to allege facts indicating that Defendant breached any of its representations, warranties, or covenants" (<u>id.</u>, p. 6); and Tenant "failed to allege facts indicating that Defendant breached a specific Lease provision by refusing to abate Plaintiffs' rent payments or refund payments already made." (<u>Id.</u>, p. 8.)

Thus, Tenant's various affirmative defenses asserting that Landlord somehow breached the Lease all fail.

/ / /

/ / /

1
2

## 2.  Payment of Rent Is Not Excused by the Force Majeure Clause in the Lease

3   Tenant mistakenly asserts that its obligation to pay the Rent is excused

4   pursuant to the "Force Majeure" clause in the Lease. (ECF No. 30, <u>33rd affirmative</u>

5   <u>defense</u>.) Tenant's reliance on the Force Majeure clause fails for several reasons.

6   First, Tenant's payment of the Rent is not excused under the Force Majeure

7   clause because the failure to do so is a default that can "can be cured by the

8   payment of money." (Ex. A at § 22.3; Ex. P at pp. 54:11-15.) Under California law,

9   a monetary carve-out such as this in a Force Majeure clause means that the lease

10  does *not* excuse payment of rent due to COVID-19 closures. <u>See</u> <u>In Re: CEC</u>

11  <u>Entertainment, Inc., et al.</u>, Case No. 20-33162, 2020 WL 7356380, at *14 (Bankr.

12  S.D. Tex. Dec. 14, 2020)(ruling that under California law, COVID-19 restrictions

13  do not excuse a tenant's payment of rent). Specifically, <u>In Re: CEC Entertainment</u>

14  rejected a commercial tenant's force majeure argument where the lease provided

15  that: "This Section shall not apply to the … inability to pay any sum of money due

16  hereunder or the failure to perform any other obligation due to the lack of money

17  …." <u>Id.</u> at *14.

18  Second, Tenant's failure to pay Rent was not "caused by" any government

19  orders, as required by the Lease. (Ex. A at § 22.3.) Whether or not the government

20  orders "prevented Tenant from operating its business" is irrelevant because Tenant

21  admits that it has the financial ability to pay the Rent. (SUF, ¶ 15.) Under these

22  circumstances, Tenant's attempt to rely on a force majeure clause to avoid paying

23  rent due to closure orders has already been rejected in the Central District:

24      Defendants have not shown that they were prevented from paying rent

25      by the government closures or that the closures *caused* them to stop

26      paying rent. Instead, Defendants only submit evidence that the fitness

27      studios could not operate as fitness studios during that time. However,

28      that does not amount to the pandemic causing an inability to pay rent.

1    Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al., Case No. SACV 20-953

2    JVS (ADSx), 2021 WL 3285036, at *8 (C.D. Cal. June 30, 2021)(emphasis

3    added)(granting summary judgment against Tenant). See also Hong Kong Islands

4    Line Am. S.A. v. Distribution Servs. Ltd., 795 F. Supp. 983, 989 (C.D. Cal.

5    1991), aff'd, 963 F.2d 378 (9th Cir. 1992)("It is well-established that in order to

6    constitute a *force majeure,* an event must be the proximate cause of

7    nonperformance of the contract"); Oosten v. Hay Haulers Dairy Emp. & Helpers

8    Union, 45 Cal.2d 784, 789 (1955)(a force majeure clause is no defense unless

9    defendant "shows affirmatively that his failure to perform was proximately caused

10   by a contingency within its terms").

11         To avoid this problem, Tenant attempts to obfuscate the performance that it

12   owes under the Lease. Tenant contends that the Force Majeure clause was triggered

13   because the government orders "prevented Tenant from operating its business."

14   (Complaint, ¶ 34.) However, the Force Majeure clause excuses performance of any

15   "act required" under the Lease where a party is delayed or hindered in performing

16   *that act*. The only act Tenant contends is excused is the payment of Rent. (Ex. P at

17   pp. 55:6-12.) No government restriction prevented Tenant from paying the Rent.

18   (Id., pp. 63:21-24, 64:6-10.) The Lease does not even "require" Tenant to operate

19   its business. Section 8.1 of the Lease only requires Tenant to open for business

20   from the Premises for *one day* out of the entire 15-year term (while it must continue

21   to pay Rent). (Ex. A at § 8.1.)

22         Third, even assuming for argument's sake that the Force Majeure clause

23   applied, it does not extinguish Tenant's obligation to pay Rent for the closure

24   period. The Lease merely *delays* a party's obligation to perform: "performance of

25   such act shall be excused for the period of delay caused by the Force Majeure Event

26   and *the period for performance of such act shall be extended* for an equivalent

27   period …." (Ex. A at § 22.3.) Again, the Central District has already ruled against

28   Tenant on this issue:

1
2
3
4
5
6
7

> [E]ach of the Leases recognizes that the force majeure provisions act only to delay performance under the Leases, not to forever abate rent altogether. … [T]he force majeure provisions do not permit complete abatement of rent and other amounts owed under the Leases. As such, even if the provisions applied, they would not support a theory that the rent obligations for the period of the closures could simply be extinguished.

8   Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al., 2021 WL 3285036, at *8.

9   The Force Majeure clause does not excuse Tenant's payment of Rent for the

10  periods during which it was closed.

11   **3.      Payment of Rent Is Not Excused by Frustration of Purpose**

12       Tenant's frustration of purpose defense (32nd affirmative Defense) does not

13  apply to the circumstances presented in this case. That defense applies where:

14  "[p]erformance remains entirely possible, but the *whole value* of the performance

15  to one of the parties at least, and the basic reason recognized by both parties, for

16  entering into the contract has been *destroyed* by a supervening and unforeseen

17  event." Dorn v. Goetz, 85 Cal.App.2d 407, 410 (1948)(emphasis added). See also

18  Lloyd v. Murphy, 25 Cal.2d 48, 55 (1944)(frustration is no defense "if

19  counterperformance remains valuable"); Continental Oil Co. v. United States, 184

20  F.2d 802, 817 (9th Cir. 1950)("A promise will not be discharged … because the

21  performance promised in return has lost value on account of supervening fortuitous

22  circumstances unless they nearly or quite completely destroy the purpose both

23  parties to the bargain had in mind"). Commercial frustration does not apply here

24  because the whole value of the Lease has not been destroyed.

25       Specifically, the temporary stoppage of operations does not destroy the

26  "whole value" of a long-term Lease. See Cab Bedford LLC v. Equinox Bedford

27  Ave, Inc., No. 652535/2020, 2020 WL 7629593, at *2 (N.Y. Sup. Ct. Dec. 22,

28  2020). In Cab Bedford, a gym/fitness center tenant contended that government

closure orders due to COVID-19 frustrated the purpose of the parties' lease. The court rejected that argument, and found that government orders "did not suspend a commercial tenant's obligation to pay rent." Id. A *temporary* shut-down of Tenant's gym "does not invalidate obligations in a fifteen-year lease." Id. The subject matter of the Lease was *not* destroyed. At best, it was temporarily hindered. Id. at *3.

> The court in <u>Store SPE</u> rejected Tenant's argument on the same ground:
>> [T]he temporary government closure of fitness centers when the properties were leased for at least twenty years each does not amount to the kind of complete frustration of purpose required for the doctrine to apply.

<u>Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al.</u>, 2021 WL 3285036, at *10 (citing <u>Greater New York Auto. Dealers Assn, Inc. v. City Spec, LLC</u>, 136 N.Y.S.3d 695 (N.Y. Civ. Ct. 2020)("The Court notes that, even if Respondent were forced by the Executive Order to close in-person operations at the Premises, a four-month closure out of a five-year lease did not frustrate the overall purpose of the Lease"); <u>BKNY1, Inc. v. 132 Capulet Holdings</u>, LLC, 2020 WL 5745631, 2020 NY Slip Op. (Sup. Ct., Kings County 2020)(holding that a nine-year restaurant lease was not frustrated by a two-month state-mandated COVID-19 closure)). <u>See also</u> <u>Gap Inc. v. Ponte Gadea New York LLC</u>, No. 20 CV 4541-LTS-KHP, 2021 WL 861121, at *9 (S.D.N.Y. Mar. 8, 2021)("adverse financial consequences from the COVID-19 pandemic does not amount to frustration of the purpose of the Lease")(collecting cases).

Here, the Lease has a 15-year term, with three five-year options to extend the tenancy. (Ex. A at §§ 1.4, 4.2.) The initial tenancy remains in place until February 28, 2034 and, if Tenant exercises its options to extend the term, Tenant may remain in possession of the Premises until 2049. (SUF, ¶ 4.) A nine-month closure of Tenant's operations did not "destroy" the value of the Lease or the

13

1    tenancy it established.

2         In fact, Tenant continued to store its gym equipment on the Premises. Its

3    furniture remained in place. Its telephones, computers and other infrastructure

4    remained in place so that it remained ready to open when restrictions were lifted.

5    (Ex. P at 107:3-17.) Those benefits were not valueless.

6         If it were true that the entire value of the Lease had been destroyed, one

7    would expect Tenant to surrender possession and contend that the Lease is

8    *terminated*. But a major premise of Tenant's case rests on the fallacy that

9    frustration would, incredibly enough, allow Tenant to remain in possession under

10   the Lease, while not paying Rent. That is not how the doctrine of commercial

11   frustration is applied in California. When and if commercial frustration applies, the

12   contract is *terminated*: "such frustration brings the contract to an end forthwith,

13   without more and automatically." 20th Century Lites, Inc. v. Goodman, 64

14   Cal.App.2d Supp. 938, 945 (1944)(quoting Johnson v. Atkins, 53 Cal.App.2d 430,

15   433 (1942)); see also In Re: CEC Entertainment, Inc., et al., 2020 WL 7356380 at

16   *9 (where frustration of purpose applies, "[g]enerally, the remedy is rescission of

17   the contract").

18        In Goodman, the plaintiff leased a neon sign to the defendant shortly before a

19   World War II emergency war order restricted outside lighting. See 20th Century

20   Lites, Inc. v. Goodman, 64 Cal.App.2d Supp. at 940. The court found that the

21   contract was frustrated without the fault of either party, that following the war order

22   *both* parties were excused from further performance, and that the parties' contract

23   was terminated. Id. The court rejected the argument that the effect of the 14-month

24   restriction "was merely to suspend, rather than terminate the contract." It held

25   instead that commercial frustration operates to terminate, not suspend, the contract.

26   Id. at 945.

27        Tenant's frustration argument invites the Court to ignore the reality here –

28   that highly sophisticated parties in a purely commercial lease transaction bargained

14

for specific language in the Force Majeure clause expressly assigning to Tenant the risk that it must continue to pay Rent in the face of these types of events. Faced with similar lease language, In re CEC Entertainment, Inc. found that "the force majeure clause … supersedes frustration of purpose" purportedly arising due to COVID-19 restrictions. Id., 2020 WL 7356380, at *14 (citing Glenn R. Sewell Sheet Metal, Inc. v. Loverde, 70 Cal.2d 666, 677 (1969).) Indeed, by statute performance is excused when it is delayed by an "irresistible, superhuman cause … *unless* the parties have expressly agreed to the contrary." Ca. Civ. Code § 1511(2)(emphasis added). There is no legal or equitable basis for the Court to overturn the parties' agreement in this regard.

Finally, the entire value of the Lease has not been destroyed here because the Lease provides that, with Landlord's consent, Tenant could use the Premises for purposes other than a fitness facility. (Ex. A at § 8.2.) On these same facts, Store SPE rejected Tenant's argument. Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al., 2021 WL 3285036, at *10 (the properties "could be used for purposes other than health clubs with [the landlord']s consent…. Accordingly, the Court does not find that the frustration of purpose doctrine excused [Tenants'] rent obligations"). The entire value of the Lease has not been destroyed.

### 4. Payment of Rent Was Not Impossible or Impracticable

Tenant's payment of Rent was not "impossible" (ECF No. 30, 27th affirmative defense) or "impracticable" (31st affirmative defense). Similarly, Tenant cannot prove that its payment of Rent was rendered impossible by a "supervening event" (18th affirmative defense; 28th affirmative defense), or "prevented" by a "superhuman cause." (30th affirmative defense.)

"Everything is deemed possible except that which is impossible in the nature of things." Cal. Civ. Code § 1597. "Facts which may make performance more difficult or costly than contemplated when the agreement was executed do not constitute impossibility." Kashmiri v. Regents of University of California, 156

15

Cal.App.4th 809, 839 (2007); <u>Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.</u>, 66 Cal.App.3d 101, 154 (1977). Further, "[t]he impossibility which will excuse the performance of a contract must consist in the nature of the thing to be done and not in the inability of the obligor to do it." <u>Caron v. Andrew</u>, 133 Cal.App.2d 402, 407 (1955); <u>Hensler v. Los Angeles</u>, 124 Cal.App.2d 71, 83 (1964). "Thus, a party may not generally rely on an impossibility defense to justify its failure to make payments, as making payments is not objectively impossible or impracticable." <u>Seamen v. Valley Health Care Med. Grp., Inc.</u>, No. SACV131709DOCRNBX, 2015 WL 9093593, at *5 (C.D. Cal. Dec. 16, 2015); <u>Hebrank v. Linmar Mgmt., Inc.</u>, No. 3:13-CV-2179-GPC-JMA, 2014 WL 3741634, at *4 (S.D. Cal. July 29, 2014), citing <u>Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.</u>, 582 F.3d 721, 728 (7th Cir. 2009)("the 'impossibility' doctrine never justifies failure to make a payment").

Even so, *Tenant concedes it has always had the financial ability to pay the Rent*. (SUF, ¶ 15.) The amount of cash Tenant has available dwarfs the amount of unpaid Rent. (Ex. M at FITNESS/DDRM 00461.) Tenant's related contention that it could not generate revenue is disingenuous.[1] The state and local orders at issue here do not apply to all 700 clubs in all 27 states, meaning Tenant generated revenue at other locations. The amount of revenue Tenant generated in 2020 easily covers the unpaid Rent many times over. (Ex. M at FITNESS/DDRM 00463.) In fact, during the closure periods, Tenant continued to pay rent to some of its landlords in California. (<u>Id.</u>, Exs. J, K; Ex. P at 68:17-20, 70:2471:4, 86:23-87:12, 88:5-15.) Tenant simply chose not to pay this Landlord.

Moreover, Tenant must establish that a precipitating event "proximately

---

[1] The Lease does not guarantee Tenant that it will generate revenue. The Lease does not even require Tenant to operate its business. Section 8.1 of the Lease only requires Tenant to open for business from the Premises for *one day* out of the entire 15-year term (while it must continue to pay Rent). (Ex. A at § 8.1.)

caused" the impossibility or impracticability. See Oosten v. Hay Haulers Dairy Emp. & Helpers Union, 45 Cal. 2d at 789. Tenant cannot do so here because Tenant had the financial ability to pay the Rent. (SUF, ¶ 15.) Store SPE adjudicated this very same issue against Tenant:

> As with force majeure provisions, impossibility and impracticability both require that the precipitating event *cause* the impossibility or impracticability…. Defendants acknowledge that they are able to pay and do not show that either the COVID-19 pandemic or closure orders prevented them from making payments. Showing a mere decrease in revenue from dues paying members does not amount to impossibility or impracticability. Thus, the impossibility and impracticability doctrines are inapplicable to Defendants' failure to pay amounts owed under the Leases.

Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al., 2021 WL 3285036, at *9.

Further, the Court should reject any contention that paying Rent, while not "impossible," was nevertheless "impracticable." Performance "is impracticable when it can only be done at an *excessive* and unreasonable cost." Vickerson v. Frey, 100 Cal.App.2d 621, 629 (1950)(emphasis added), quoting Min. Park Land Co. v. Howard, 172 Cal. 289, 293 (1916); see also Oosten v. Hay Haulers Dairy Emp. & Helpers Union, 45 Cal.2d at 794 (impracticability requires a showing of "extreme" expense, injury or loss). Clearly, neither COVID-19 nor the related government orders have increased the "cost" of Tenant's performance – *i.e.*, paying the Rent. See In Re: CEC Entertainment, Inc., et al., 2020 WL 7356380 at *13 ("The cost [of performance] is the rent, and nothing about the pandemic or government regulations increase the cost of rent at any venue. Impossibility does not apply to the California leases …").

Finally, a contract "is binding, though the performance is rendered impracticable, or even impossible, by some unforeseen cause over which the

promisor has no control but *against which he might have provided in his contract*."
Caron v. Andrew, 133 Cal. App. 2d at 408 (emphasis added). Here, Tenant attempts
to assert the Force Majeure clause because it refers to "restrictive laws." This
language merely demonstrates that, though unforeseen, Tenant could have
contracted for relief from paying Rent in the event of government restrictions. To
the contrary, Tenant contractually agreed that no purported force majeure would
excuse the "payment of money."

### 5. California Civil Code Section 1511(1) Does Not Apply Because Payment of Rent Was Not Prevented by "Operation of Law"

Tenant alleges that its obligation to pay rent is legally excused pursuant to
Ca. Civil Code § 1511(1). (ECF No. 30, 29th affirmative defense.) Section 1511(1)
provides that "performance of an obligation" is excused "[w]hen such performance
or offer is prevented or delayed … by the operation of law …." Tenant's reliance
on this statute is misplaced. There is no government order or law preventing Tenant
from *paying Rent.*

In fact, the Governor's order authorizing local officials to enact eviction
moratoriums expressly states: "*[n]othing in this Order shall relieve a tenant of the
obligation to pay rent, nor restrict a landlord's ability to recover rent due.*" (See
Request for Judicial Notice, Ex. 1, Executive Order N-28-20 at ¶ 2, as
extended)(emphasis added).

Tenant's contention that performance was prohibited by "operation of law"
obfuscates the "performance" that is due from Tenant. The "performance" owed to
Landlord is Tenant's *timely payment of Rent*. Tenant is not asserting that any of its
other obligations were excused. (Ex. P at pp. 55:6-12.) That temporary closure
orders made it more difficult or unprofitable to pay the Rent does not excuse
payment: "laws or other governmental acts that make performance unprofitable or
more difficult or expensive do not excuse the duty to perform a contractual

18

obligation." <u>Lloyd v. Murphy</u>, 25 Cal.2d at 55.

Where, as here, performance – *i.e.*, the payment of Rent – is not prevented by "operation of law," a different subsection of Civil Code section 1511 applies. Civil Code section 1511(2) provides that performance is excused when it is delayed by an "irresistible, superhuman cause … *unless* the parties have expressly agreed to the contrary." (Emphasis added). The parties expressly agreed that events which might otherwise trigger the Force Majeure clause shall not excuse the payment of Rent.

### 6. Payment of Rent Is Not Excused Due to Failure of Consideration

Tenant alleges that its payment of Rent is barred due to "failure of consideration." (ECF No. 30, <u>8th affirmative defense</u>.) "Any benefit conferred, or agreed to be conferred, upon the promisor … as an inducement to the promisor, is a good consideration for a promise." Ca. Civ. Code § 1605. The rule in California is that "any consideration, however small" will support a contract. <u>See</u> <u>Kowal v. Day</u>, 20 Cal.App.3d 720, 727 (1971). <u>See also</u> <u>Schumm by Whyner v. Berg</u>, 37 Cal.2d 174, 185 (1951)("the validity of consideration does not depend on its value"); <u>Ayse Sen v. Amazon.com, Inc.</u>, No. 12CV2878 AJB BGS, 2013 WL 6730180, at *6 (S.D. Cal. Dec. 19, 2013)(valuable consideration, "however small or nominal," is sufficient to support an action on a contract). Moreover, the fact that consideration "subsequently diminishes in value" cannot relieve a promisor from liability on his promise. <u>Riverside Water Co. v. Jurupa Ditch Co.</u>, 187 Cal.App.2d 538, 542 (1960).

Here, Landlord has honored its obligations under the Lease. Landlord provided the Premises to Tenant for its exclusive use during the term of the Lease, and Tenant remained in possession during the closure period. (SUF, ¶ 12.) Landlord maintained the common areas of the shopping center, paid the property taxes, and maintained the required insurance. (Salem Decl., ¶ 10.) Landlord also honored its obligation, pursuant to Section 1.9 of the Lease, to "not allow anyone other than

19

1  Tenant to sell health club, gym or fitness related memberships anywhere within the

2  Project ….” (<u>Id.</u>, ¶ 10.) As a result, Tenant has resumed operations on the Premises.

3  (SUF, ¶ 17.)

4         Again, the fact that all of these benefits to Tenant may have become

5  temporarily less valuable during the closures is irrelevant. Indeed, “[i]t is

6  elementary, in the law of contracts that the consideration need not involve a benefit

7  to the promisor but that it is enough that it be a detriment to the promisee.” <u>Andrew</u>

8  <u>Smith Co. v. Paul's Pak, Inc.</u>, 754 F. Supp. 2d 1120, 1127 (N.D. Cal. 2010), citing

9  <u>Feldmeier v. Mortg. Sec., Inc.</u>, 34 Cal.App.2d 201, 271 (1939). <u>See also</u> <u>Stone v.</u>

10 <u>Burke</u>, 110 Cal. App. 2d 748, 756 (1952)(“The existence of a good consideration is

11 not dependent upon the fact that a benefit should be conferred upon the promisor. It

12 is sufficient that a ‘prejudice suffered or agreed to be suffered’ by the promisee”).

13 Here, the mere fact that Tenant has remained in possession of the Premises

14 demonstrates that Landlord has been prejudiced.

15        In the specific context of closure orders related to COVID-19, courts have

16 rejected the argument that such orders result in a failure of consideration. <u>See</u> <u>Store</u>

17 <u>SPE LA Fitness, et al. v. Fitness Int'l, LLC et al.</u>, 2021 WL 3285036, at *10

18 (disagreeing that “the temporary closure orders amounted to a failure of

19 consideration” and finding the right to use the property sufficient consideration);

20 <u>Gap Inc. v. Ponte Gadea New York LLC</u>, 2021 WL 861121, at *10 (rejecting

21 failure of consideration defense because the tenant “continued to receive the

22 consideration promised under the Lease – retail premises for its operations – from

23 the defendant landlord during the course of the COVID-19 pandemic”); <u>Cab</u>

24 <u>Bedford LLC v. Equinox Bedford Ave, Inc.</u>, 2020 WL 7629593, at *3 (rejecting the

25 tenant’s failure of consideration defense because “[t]his is not a case where they are

26 forbidden from running a gym ever again at the premises”).

27 / / /

28 / / /

### 7.     There Has Been No Government "Taking"

Tenant alleges that Landlord's breach of lease claim is barred because the government closure orders constituted a "temporary taking" of the Premises. (ECF No. 30, <u>26th affirmative defense</u>.) This defense fails as a matter of law.

First, as this Court correctly recognized in its order granting Landlord's motion to dismiss, the closure orders alleged by Tenant do not constitute a government exercise of eminent domain powers. (ECF No. 23, p. 8:9-10, "Plaintiff has failed to allege that a Taking occurred.") No government order was directed specifically at the Premises. The orders may have temporarily limited Tenant's operations throughout the jurisdiction, but the government did not condemn the Premises, prevent all use of the Premises, or physically impede access for a public or quasi-public use. Such restrictions do not constitute a taking. <u>See 111 Fulton Street Investors, LLC v. Fulton Quality Foods LLC</u>, No. 653579/2020, 2021 WL 408238, at *2 (N.Y. Sup. Ct. Feb. 05, 2021)(declining to accept a tenant's expansive view that COVID-19 restrictions constitute a "taking" because under that view "any regulation that limits the operation of a business would constitute a taking"); <u>1600 Walnut Corp. v. Cole Haan Co. Store</u>, No. CV 20-4223, 2021 WL 1193100, at *3 (E.D. Pa. Mar. 30, 2021)("COVID-19 Executive Orders Do Not Constitute a Taking"); <u>Friends of Danny DeVito v. Wolf</u>, 227 A.3d 872, 891 (Pa.), cert. denied, 141 S. Ct. 239, 208 L. Ed. 2d 17 (2020)(business closure order was a valid exercise of Pennsylvania governor's police power, not a "taking"). <u>See also Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al.</u>, 2021 WL 3285036, at *11 (finding that local governments did not "take" anything, they simply issued regulations that temporarily limited operations).

Second, even if there were a temporary taking, the Lease does not permit rent abatement in the event of a temporary taking. Section 16.1 of the Lease provides:

> In the event of a temporary taking … Tenant shall have the right to
> elect to either terminate this Lease in accordance herewith or to not

21

terminate this Lease, in which event Tenant *shall remain responsible for all Minimum Rent and Additional Rent due during the pendency of such temporary Taking* of the Premises and receive all compensation awarded by the condemning authority….

(Ex. A at § 16.1, emphasis added.) Tenant has not attempted to terminate the Lease. (SUF, ¶ 13.) Tenant has resumed operating its fitness center. (SUF, ¶ 17.) And no government authority has provided Landlord with any compensation for issuing COVID-19 related closure orders. (Salem Decl., ¶ 13.)

### C.    Tenant's Affirmative Claim for Declaratory Relief Fails

Tenant's only surviving affirmative claim for relief is its claim for declaratory relief. That claim essentially seeks adjudication of the same affirmative defenses. Tenant's declaratory relief claim fails as a matter of law.

#### 1.  The Declaratory Relief Claim Relates Only to Past Events

Because Tenant has resumed operations on the Premises, its declaratory relief claim apparently seeks an adjudication relating only to past events. It does not seek, as it must, *prospective* relief. See Gafcon, Inc. v. Ponsor & Assocs., 98 Cal.App.4th 1388, 1403 (2002)("declaratory relief 'operates prospectively, and not merely for the redress of past wrongs'"), quoting Babb v. Superior Court, 3 Cal.3d 841, 848 (1971); Baldwin v. Marina City Properties, Inc., 79 Cal.App.3d 393, 407 (1978) ("Declaratory relief operates prospectively, serving to set controversies to rest….[T]here is no basis for declaratory relief where only past wrongs are involved"); Travers v. Louden, 254 Cal. App. 2d 926, 931 (1967)("There is unanimity of authority to the effect that the declaratory procedure operates prospectively, and not merely for the redress of past wrongs"). See also Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp., 51 F.Supp.3d 937, 950 (E.D. Cal. 2014)("declaratory relief 'operates prospectively'"); Britz Fertilizers, Inc. v. Bayer Corp., 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009)(granting summary judgment where plaintiff sought "declaratory relief only to address 'past wrongs'").

1    Further, a court may reject a declaratory relief claim where the "matter can

2  be raised as an affirmative defense" by the party seeking declaratory relief. See

3  C.J.L. Constr., Inc. v. Universal Plumbing, 18 Cal.App.4th 376, 391

4  (1993)(collecting authorities); Standard Brands of California v. Bryce, 1 Cal.2d

5  718, 721 (1934)(rejecting plaintiff's declaratory relief claim where the alleged

6  injury already occurred, and the only distinction between plaintiff's declaratory

7  relief claim and defendant's counterclaim was that plaintiff sued first). See also

8  Welfare Investment Co. v. Stowell, 132 Cal.App. 275, 276–278 (1933)(court

9  properly struck cross-complaint when all of the issues it raised were likewise

10  alleged as affirmative defenses.)

11    Here, the closure orders have been lifted, Tenant has resumed operating its

12  business on the Premises, and Tenant has resumed paying the Rent for the current

13  periods. (SUF, ¶¶ 16-18.) Tenant's declaratory relief claim must therefore be

14  rejected. See Bayer v. Neiman Marcus Group, Inc., 861 F.3d 853, 867-868 (9th Cir.

15  2017)(upholding summary judgment against plaintiff where "the circumstances

16  prevailing since [plaintiff] filed this action have forestalled any occasion to award

17  him meaningful declaratory relief").

18    Further, the prospect of any future government restrictions preventing Tenant

19  from operating its business on the Premises is pure speculation. The facts relating to

20  any hypothetical future COVID-19 restrictions are unknown. Any declaratory

21  judgment based upon an assumed set of hypothetical facts pertaining to potential

22  future government restrictions would constitute an impermissible advisory opinion.

23  See Rhoades v. Avon Prod., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007)("When

24  presented with a claim for a declaratory judgment … federal courts must take care

25  to ensure the presence of an actual case or controversy, such that the judgment does

26  not become an unconstitutional advisory opinion"); Stone Brewing Co., LLC v.

27  MillerCoors LLC, 445 F.Supp.3d 1113, 1138 (S.D. Cal. 2020)("A court may not

28  enter an advisory opinion on a hypothetical set of facts"); Gafcon, Inc. v. Ponsor &

23

1   Assocs., 98 Cal.App.4th at 1403 (the subject of declaratory relief "must be of a

2   character which admits of specific and conclusive relief by judgment within the

3   field of judicial determination, as distinguished from an advisory opinion upon a

4   particular or hypothetical state of facts").

5         **2.  Tenant's Declaratory Relief Claim Fails on the Merits for**

6             **All of the Same Reasons Its Affirmative Defenses Fail**

7       Given that government restrictions have been lifted and Tenant is paying

8   Rent for the current periods, Tenant's declaratory relief cause of action is nothing

9   more than a mirror image of Landlord's breach of contract claim and should be

10   dismissed. See  Store SPE LA Fitness 2013-7, LLC v. Fitness Int'l, LLC, et al.,

11   Case No. SACV 20-953 JVS (ADSx), 2020 WL 8116171 at *6 (C.D. Cal. Dec. 9,

12   2020)(granting a landlord's motion to dismiss Tenant's declaratory relief

13   counterclaim based on COVID-19 restrictions as "redundant" of the landlord's

14   breach of contract claim).

15       Paragraph 108 of the complaint sets forth the declaratory rulings Tenant

16   seeks. Subsections (a)-(f) mirror Tenant's affirmative defenses, and each of them

17   fails for the reasons discussed above. Subsection (g) seeks recovery of Rent Tenant

18   paid for the closure periods (Landlord is not aware of any such payments), but an

19   award of money is not a proper subject of declaratory relief.

20       The only new issues raised by Tenant's declaratory relief claim are its

21   requests for: (1) "proportionately abated" rent, and (2) an extension of the term of

22   the Lease. (Complaint, ¶ 108(g), (h).) In other words, Tenant wants the Court to

23   write new Lease terms. The Court does not have the power to do that. "A bedrock

24   principle of contract law in California has always been that competent parties

25   should have 'the utmost liberty of contract' to arrange their affairs according to

26   their own judgment so long as they do not contravene positive law or public

27   policy." Series AGI W. Linn of Appian Grp. Invs. DE, LLC v. Eves, 217

28   Cal.App.4th 156, 164 (2013). "The courts cannot make better agreements for

parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably." Id. Courts "do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." Holguin v. Dish Network LLC, 229 Cal.App.4th 1310, 1324 (2014). Tenant could have bargained for the elimination or reduction of Rent in the event of a force majeure, but that is not the contract it made. Nor did it bargain for an extended term of occupancy. The Court should deny Tenant's claim for declaratory relief.

## V.   **CONCLUSION**

Landlord respectfully requests that the Court grant summary judgment in favor of Landlord on both parties' claims, in their entirety. Alternatively, if the Court determines that there is a genuine issue of material fact that prevents judgment on all issues, Landlord respectfully requests that the Court grant partial summary judgment in favor of Landlord as to all issues that are amenable to adjudication.

DATED: September 20, 2021        HODEL WILKS LLP

By:_____/s/ FRED L. WILKS_____
                FRED L. WILKS

Attorneys for Defendant and Counterclaimant
DDRM HILLTOP PLAZA L.P.

4839-2786-2004, v. 4