JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| FITNESS INTERNATIONAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DDRM HILL TOP PLAZA L.P., and DOES 1 through 10 inclusive, <br><br> Defendants. <br><br> DDRM HILL TOP PLAZA L.P., <br><br> Counterclaimant, <br><br> v. <br><br> FITNESS INTERNATIONAL, LLC <br><br> Counter-Defendant | Case No.: SACV 21-00142CJC(ADSx) <br><br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. 59] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 64]** |

## I. INTRODUCTION

On December 18, 2020, Plaintiff and Counter-Defendant Fitness International, LLC filed this action against Defendant and Counterclaimant DDRM Hill Top Plaza L.P. in Orange County Superior Court. (Dkt. 1 [Notice of Removal].) Plaintiff sought relief for several claims, including breach of contract, monies had and received, monies paid by mistake, and declaratory relief, arising from a lease agreement in which Plaintiff (hereinafter "Tenant") was Defendant's (hereinafter "Landlord") tenant. (Dkt. 1-3 [State Court Complaint].) On January 22, 2021, Landlord removed this action to federal court. (Notice of Removal.) On February 23, 2021, this Court granted Landlord's motion to dismiss most of Tenant's claims. (Dkt. 23 [Amended Order on Motion to Dismiss, hereinafter "MTD Order"].) Tenant's only remaining claim is its declaratory relief cause of action, (*id.*), which seeks a judgment that Tenant has no obligation to pay rent to Landlord for certain periods of time under the parties' lease agreement. (State Court Complaint at 18.) Landlord counterclaimed against Tenant for breach of the same lease agreement. (Dkt. 25 [Landlord's Answer and Counterclaim against Plaintiff].) In turn, Plaintiff raised several affirmative defenses. (Dkt. 30 [Tenant's Answer to Landlord's Counterclaim].)

Now before the Court are the parties' cross motions for summary judgment. (Dkt. 59 [Landlord's Motion for Summary Judgment, hereinafter "Landlord's MSJ"], Dkt. 64 [Tenant's Motion for Summary Judgment, hereinafter "Tenant's MSJ"].) For the following reasons, Landlord's motion for summary judgment is **GRANTED** and Tenant's motion for summary judgment is **DENIED**.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted. Tenant operates health clubs and fitness facilities nationwide. (Dkt. 80 [Additional Statement of Uncontroverted Facts, hereinafter "ASUF"] ¶ 1.) These clubs and facilities operate on a membership model, in which Tenant derives its revenue primarily from membership dues paid by members in exchange for access to its facilities. (*Id.* ¶ 2.) Tenant and Landlord are parties to a valid and binding Retail Lease dated June 9, 2017 (the "Lease"), for a 39,122 square-foot facility in Richmond, California. (Dkt. 76 [Tenant's Response to Landlord's Statement of Uncontroverted Facts, hereinafter "SUF"] ¶ 1.) The Lease established a term of fifteen years following the "Rent Commencement Date," which was February 8, 2019, with three separate options for Plaintiff to extend the term by five years each. (*Id.* ¶¶ 2–3.) Pursuant to the lease, one of the "primary uses" of the premises was "the operation of a health club and fitness facility[.]" (ASUF ¶ 5.) The Lease also contains a force majeure provision. (*Id.* ¶ 8.)

In March of 2020, California Governor Gavin Newsom issued an executive order requiring that residents heed any orders and guidance of state and local public officials with respect to measures taken in response to the coronavirus pandemic. (*Id.* ¶¶ 9–10, 15.) On March 16, 2020, the Health Officer of Contra Costa County, where the fitness facility is located, issued an order requiring the closures of fitness and exercise gyms within the County.[1] (*Id.* ¶ 12.) On or about March 17, 2020, Tenant ceased operating its

---

[1] Tenant asks that the Court take judicial notice of these government closure orders and other official documents from government agencies concerning the coronavirus pandemic. (Dkt. 66 [Tenant's Request for Judicial Notice, hereinafter "RJN"].) Specifically, Tenant asks the Court to take judicial notice of: California Governor Gavin Newsom's March 4, 2020 Proclamation of a State of Emergency, (RJN, Exhibit 3); the World Health Organization Director-General's Opening Remarks at The Media Briefing on Covid-19, (RJN Exhibit 4); Governor Gavin Newsom's March 12, 2020 Executive Order N-25-20, (RJN, Exhibit 5); the March 13, 2020 Proclamation Declaring a National Emergency Concerning the Novel Coronavirus Disease Outbreak, (RJN, Exhibit 6); Governor Newsom's Executive Order N-33-20, (RJN, Exhibit 7); the March 16, 2020 Health Officer Order from Contra Costa County Health

Richmond fitness facility due to the government-mandated closure orders, (*id.* ¶ 13), and informed Landlord that, in light of the coronavirus pandemic, Tenant had closed its clubs and facilities due to certain "restrictive laws" and its concern for its gym members, employees, and staff, (SUF ¶ 5). While Tenant briefly re-opened its premises pursuant to an Order issued by the Health Officer of Contra Costa County on September 30, 2020, (ASUF ¶ 16; RJN, Ex. 9), Tenant again closed its businesses pursuant to another county order on November 17, 2020, (*id.* ¶ 18). Tenant failed to pay the rent due on April 1, 2020 through September 2020, (SUF ¶ 6), and from December 2020 to February 2021, (*id.* ¶ 9). On April 25, 2020, June 15, 2020, November 17, 2020, and December 4, 2020 Landlord sent Tenant notices of default for failure to pay rent. (*Id.* ¶¶ 7–8, 10–11.)

Although Tenant stopped paying rent, at no point did Tenant return possession of the premises to Landlord nor did Tenant attempt to terminate the Lease. (*Id.* ¶¶ 12–13.) Tenant had the financial ability to pay the rent due under the Lease during the time its Richmond fitness center was closed. (*Id.* ¶ 15.) In March of 2021, government restrictions prohibiting the operation of fitness centers in Richmond, California were lifted. (*Id.* ¶ 17.) Tenant resumed operating its Richmond fitness center on March 14, 2021. (*Id.*) Landlord maintains that the total amount of past due Rent owed under the Lease is $796,525.47. Tenant maintains, however, that it is entitled to $180,417.52 from

---

Services, (RJN, Exhibit 8); the September 14, 2020 Health Officer Order from Contra Costa County Health Services, (RJN, Exhibit 9); the November 14, 2020 Health Officer Order from Contra Costa County Health Services, (RJN, Exhibit 10); the July 13, 2020 Statewide Public Health Officer Order issued by the California Department of Public Health, (RJN, Exhibit 11); the March 12, 2021 Contra Costa Health Services press release, (RJN, Exhibit 12); the April 6, 2021 Contra Costa Health Services press release, (RJN, Exhibit 13); Governor Newsom's Executive Order N-07-21; (RJN, Exhibit 14); and the counter claim filed by Landlord in the federal court case No. 8:21-cv-00142; (RJN, Exhibit 15.) Upon a properly supported request by a party, a federal court may take judicial notice of adjudicative facts. Fed. R. Evid. 201(a), (d). The Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* 201(b); *see In re Tyrone F. Conner Corp., Inc.,* 140 B.R. 771, 781 (Bankr. E.D. Cal. 1992). The Court **GRANTS** Tenant's motion for judicial notice because each of the identified documents are from sources whose accuracy cannot reasonably be questioned.

Landlord for the periods government coronavirus restrictions forced the facility to close. (*Id.* ¶ 19.)

Landlord now moves for summary judgment on its breach of contract claim against Tenant for failure to pay rent due under the Lease and on Tenant's declaratory relief claim. (Landlord's MSJ.) Tenant has moved for summary judgment on Landlord's claim for breach of contract and its affirmative defenses of impossibility, California Civil Code § 1511(1), California Civil Code § 1511(2), impracticability, frustration of purpose, and force majeure. (Tenant's MSJ at 2.)

### III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325.

As in this case, when the moving party will have the burden of proof on its claim at trial, "it must demonstrate that no reasonable trier of fact could find other than for the moving party[.]" *Ybarra v. John Bean Technologies Corp.*, 853 F. Supp. 2d 997, 1001

1  (E.D. Cal. 2012) (citing *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.  If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. Proc. 56(e).

The court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  The court does not make credibility determinations or weigh conflicting evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).  But conclusory and speculative testimony in affidavits or moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**IV. DISCUSSION**

**A. Landlord's Breach of Contract Claim**

To show it is entitled to summary judgment on its breach of contract claim, Landlord must show that no reasonable trier of fact would find anything other than: "(1) the existence of the contract, (2) [Landlord's] performance or excuse for nonperformance, (3) [Tenant's] breach, and (4) the resulting damages to [Landlord]." *E.D.C. Technologies, Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016).  The crux of the parties' dispute is whether a force majeure provision in the parties' Lease

excuses Tenant's failure to pay rent during the closure periods at issue. (Landlord's MSJ at 10–12, Tenant's MSJ at 8–13.) In full, the force majeure provision states:

> ***If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of*** strikes, lockouts, inability to procure labor or materials, retraction of any Governmental Authority of the Building Permit or any other construction related permit once it has already been issued, failure of power, ***restrictive laws***, riots, insurrection, war, fire, inclement weather or other casualty or ***other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed***, ***financial inability excepted*** (each, a "Force Majeure Event"), subject to any limitations expressly set forth elsewhere in this Lease, ***performance of such act shall be excused for the period of delay caused by the Force Majeure Event*** and the period of performance of such act shall be extended for an equivalent period . . . ***Delays or failures to perform*** resulting from lack of funds or ***which can be cured by the payment of money*** shall not be Force Majeure Events.

(Dkt. 64-2 [Declaration of Diann D. Alexander, Esq. In Support of Tenant's Motion for Summary Judgment, hereinafter "Alexander Decl."] Exhibit 1, Lease Agreement, § 22.3 (emphases added).)

Though the government-mandated closure orders constitute restrictive laws, Tenant and Landlord interpret the Force Majeure provision differently. Tenant argues that its failure to pay rent was not a breach of the Lease because the closure orders constitute "restrictive laws" that have "delayed," "hindered in," and/or "prevented" Tenant from its contractual right to use the Premises for the specified use required by the Lease, thereby excusing Tenant from the obligation of paying rent for a facility it could not use. (Tenant's MSJ at 9.) Landlord, on the other hand, argues that the restrictive laws at issue did not relieve Tenant of its obligation to pay rent because Tenant's failure to perform its obligation can be cured by the payment of money. (Landlord's MSJ at 10–12.)

The Court agrees with Landlord. The plain text of the force majeure provision is clear and operates to delay a party's "*performance of any act required*" under the Lease when it is "*caused by the Force Majeure Event*." (Alexander Decl., Ex. 1, Lease Agreement, § 22.3 (emphases added).) Though Tenant attempts to argue that it is excused from paying rent because the restrictive laws have prevented it "from its contractual right to use the Premises," this is a version of the same argument this Court has already rejected. That is, Tenant seems to argue that the restrictive laws prevented Landlord from performing the Landlord's obligation of providing the premises for Tenant to use. But as the Court already explained in its Order granting Landlord's Motion to Dismiss, the Lease does not obligate Landlord to "ensure that the government does not prohibit the operation of Plaintiff's business." (MTD Order at 5.) In other words, there has been no delay, hindrance, or prevention of Landlord's performance of the Lease, because it was not obligated to ensure that Tenant would be free from the government closure orders.

Tenant, on the other hand, was obligated to pay rent under the Lease, even during the closure periods. The force majeure provision explicitly states that "[d]elays or failures to perform . . . which can be cured by the payment of money shall not be Force Majeure Events[.]" (Lease Agreement § 22.3.) Here, Tenant's "failure[] to perform," *i.e.*, its failures to pay rent, can "be cured by the payment of money" and thus cannot constitute a force majeure event. Moreover, even if the Court were to construe the restrictive laws at issue as a force majeure event, Tenant has not shown that its failure to pay rent was proximately caused by the restrictive laws, as required under the force majeure provision, (*Id.* ["performance of such act shall be excused for the period of delay ***caused by*** the Force Majeure Event"]), and California law, *see Oosten v. Hay Haulers Dairy Emp. Helpers Union*, 45 Cal.2d 784, 789 (1955). Indeed, Tenant concedes that it had the ability to pay the rent during the entirety of the closure periods. (SUF ¶ 15.)

Tenant's argument that the purpose of the Lease has been frustrated, and therefore its failure to pay rent is excused, is similarly unconvincing. (Tenant's MSJ at 16–19.) "Where the parties assume that a certain object or effect will be attained, and this becomes impossible, performance by the injured party is excused." 1 Witkin, Summary of California Law, Contracts, § 868. The doctrine of frustration of purpose applies when "[p]erformance remains entirely possible, but *the whole value* of the performance to one of the parties at least, and the basic reason recognized as such by both parties, for entering into the contract *has been destroyed* by a supervening and unforeseen event." *Id.* (*citing Dorn v. Goetz*, 85 Cal. App. 3d 407, 410-11 (1949)) (emphases added). Though Tenant is correct that the primary purpose of the Lease was so Tenant could operate a health club and fitness facility, (Lease Agreement § 1.9), and the government closure orders prevented Tenant from carrying out that purpose for nine months, the doctrine of frustration of purpose does not apply here. That is because the whole value of the Lease agreement has not been destroyed. *See Lloyd v. Murphy*, 25 Cal. 2d 48, 55 (1944) (frustration is no defense "if counterperformance remains valuable"); *see also Continental Oil Co v. United States*, 184 F.3d 802, 817 (9th Cir. 1950). As Landlord points out, the Lease at issue is a multi-year lease, with the current term set to expire in February 2034. (SUF ¶ 4.) A temporary shut down of Tenant's fitness center, does not therefore "destroy" the entire value of the Lease because Tenant can, and does, continue to make use of the premises and can until 2034. *See Store SPE LA Fitness, et al. v. Fitness Int'l, LLC et al.*, 2021 WL 3285036, at *10 ("temporary government closure of fitness centers when the properties were leased for at least twenty years . . . does not amount to the kind of complete frustration of purpose for the doctrine to apply"); *see also Greater New York Auto. Dealers Assn., Inc. v. City Spec, LLC*, 136 N.Y.S.3d 695 (N.Y. Civ. Ct. 2020) ("a four-month closure out of a five-year lease did not frustrate the overall

purpose of the Lease"); *Gap Inc. v. Ponte Gadea New York LLC*, 2021 WL 861121, at *9 (S.D.N.Y. Mar. 8, 2021) (similar).[2]

Tenant's defenses of impossibility and impracticability also fail under California law. The defense of impossibility may apply when a government order makes it unlawful for a party under a contract to perform its obligations. *Yuba County v. Matton*, 160 Cal. App. 2d 456, 459 (1958). Tenant argues that the defense of impossibility applies because the government closure orders made it illegal for Tenant to operate its fitness club. (Tenant's MSJ at 20.) But Tenant's performance obligation under the Lease was to pay rent, not to operate a fitness club. And the government closure orders did not make it illegal for Tenant to pay rent. (RJN, Exs. 1–2, 5–10). Indeed, "a party may not generally rely on an impossibility defense to justify its failure to make payments, as making payments is not objectively impossible[.]" *Seamen v. Valley Health Care Med. Grp., Inc.*, 2015 WL 9093593, at *5 (C.D. Cal. Dec. 16, 2015); *see also Hebrank v. Linmar Mgmt., Inc.*, 2014 WL 3741634, at *4 (S.D. Cal. July 29, 2014) (citing *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 728 (7th Cir. 2009) ("[T]he 'impossibility' doctrine never justifies failure to make a payment[.]")).

Similarly, the defense of impracticability applies when performance can only be done at an excessive and unreasonable cost. *Mineral Park Land Co. v. Howard*, 172 Cal. 289, 293 (1916); *see also* Rst. of Contracts § 462 (impracticability of performance occurs when there is "extreme and unreasonable difficulty, expense, injury or loss involved.") Plaintiff argues that since it was not earning revenue during the closure periods from

---

[2] When the doctrine of frustration of purpose does apply, "[g]enerally, the remedy is recission of the contract." *In Re: CEC Entertainment, Inc. et. al.*, 625 B.R. 344, 357 (Bankr. S.D. Tex. 2020). Here, however, Tenant did not seek to terminate or rescind the contract and always remained in possession of the property. (SUF ¶¶ 12–13). By its own actions, Tenant has therefore waived its right to assert the affirmative defense. *See Guthrie v. Times-Mirror Co.,* 51 Cal. App. 3d 879, 888 n.7 (1975) (rescission under the doctrine of frustration of purpose requires that the facts establish that "a supervening fortuitous event has destroyed the expected nature of performance to the party seeking avoidance").

membership dues, the cost of paying rent has become excessive and highly burdensome. (Tenant's MSJ at 10.) However, nothing about the coronavirus pandemic has increased the "cost" of Tenant's performance of paying rent.[3] *See In Re CEC Entertainment, Inc.*, 625 B.R. 344, 362 (Bankr. S.D. Tex. 2020) ("The cost [of performance] is the rent, and nothing about the pandemic or government regulations increase the cost of rent at any venue.") Though Tenant's financial circumstances may differ, the cost of performance is the same as it has always been, and the doctrine of impracticability therefore does not apply.

Finally, Tenant's affirmative defenses under California Code of Civil Procedure Sections 1511(1) and 1511(2) also do not provide Tenant with an escape from summary judgment. Section 1511(1) provides that "performance of an obligation" is excused "[w]hen such performance or offer is prevented or delayed . . . by operation of law[.]" Cal. Civ. Code § 1511(1). However, for the same reasons many of Tenant's other affirmative defenses fail, the government closure orders did not prevent, or even delay, Tenant's performance obligation: to pay rent. (RJN, Exs. 1–2, 5–10.) Though the Court acknowledges that the closure orders may have made it more difficult, or even unprofitable, to pay the rent Tenant owes under the Lease, Section 1511(1) simply does not provide an excuse for non-payment. Nor does Section 1511(2). That provision provides that "performance of an obligation . . . is excused . . . when it is prevented or delayed by an irresistible, superhuman cause[.]" Cal. Civ. Code § 1511(2). And while

---

[3] Plaintiff also raises the doctrines of temporary impossibility and temporary impracticability. (Dkt. 74, Tenant's Opposition to Landlord's Motion for Summary Judgment, hereinafter "Tenant Opp."] at 16–19.) However, these defenses also fail because Tenant's obligation under the Lease, whether styled as permanent or temporary, was to pay rent and it clearly was not impossible or impractical for Tenant to pay rent.

the coronavirus pandemic is almost certainly an "irresistible, superhuman cause" it simply did not delay Tenant's "obligation" to pay rent here.[4]

Based on the undisputed facts and legal issues presented in this case, Landlord has established that no reasonable trier of fact would find anything other than: 1) there is a valid contract between the parties, (SUF ¶ 1); Landlord performed under the contract; and for the reasons described above, Tenant breached the terms of the Lease by failing to pay the rent. The Court next turns to the last element of Plaintiff's breach of contract claim, its resulting damages. *E.D.C. Technologies, Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016).

Landlord presents evidence that the total amount of damages it incurred because of Tenant's breach is $796,525.47. (Dkt. 59-2 [Declaration of Phillip Salem In Support of Landlord's Motion for Summary Judgment, hereinafter "Salem Decl."] ¶ 12, Exhibits I and O.) Specifically, Philip Salem, director of National Accounts for SITE Centers Corp, an affiliate of Landlord, declares that Landlord sends quarterly statements to Tenant in the ordinary course of business, which reflect the amount due under the Lease. (*Id.* ¶ 12(a)). According to the most recent quarterly statement, dated September 13, 2021,

---

[4] Tenant also has raised the affirmative defenses of failure of consideration, (Opp. at 21), and failure to perform condition precedent, (*id*. at 23). With respect to its failure of consideration argument, Tenant argues that the payment of rent was "in consideration and exchange for [Tenant's] right to use the Premises." (*Id*. at 21.) However, as Defendant points out in its Reply, (Dkt. 79 [Landlord's Reply] at 16), several courts have already rejected such an argument and the Court finds their reasoning persuasive. *See Store SPE LA Fitness*, 2021 WL 3285036, at *10 (rejecting argument that "temporary closure orders amounted to a failure of consideration" and finding the right to use the property sufficient consideration); *Ponte Gadea New York*, 2021 WL 861121, at *10 (rejecting failure of consideration defense because tenant "continued to receive the consideration promised under the Lease – retail premises for its operations"); *Cab Bedford LLC v. Equinox Bedford Ave. Inc.*, 2020 WL 7629593, at *3 (N.Y. Sup. Ct. Dec. 22, 2020) (similar). With respect to its failure to perform condition precedent, Tenant again argues that "[d]ue to the government closures, Landlord failed to deliver the use and enjoyment of the Premises as health club [sic] to Fitness, or allow Fitness full, quiet, and peaceful possession of the Premises." (Opp. at 23.) Again, as this Court already ruled, Landlord had no obligation to ensure that Tenant's use and enjoyment of the property would be free from government restrictions, (MTD Order at 5). There is no "condition precedent" Landlord failed to fulfill.

the reflected amount due and owed was $796,525.47. (*Id.* Ex. I.) Landlord's internal accounting records also confirm that this is the rent amount Tenant owes. (*Id.* ¶ 12(b), Ex. O.) Though Tenant argues that it is entitled to $180,417.52 from Landlord for the closure periods from March 17, 2020 through November 30, 2020, (SUF ¶ 19), this argument rests on Tenant's interpretation of the force majeure provision in the Lease agreement, (*see id.*), which the Court has rejected. Therefore, Landlord has presented evidence such that no reasonable trier of fact could disagree that Landlord's resulting damages from Tenant's breach is $796,525.47.

**B. Tenant's Declaratory Relief Claim**

Landlord is also entitled to summary judgment on Tenant's remaining declaratory relief claim. Because Tenant has resumed operations on the premises, (SUF ¶ 17), Tenant is seeking adjudication relating only to past events. However, declaratory judgments may only offer *prospective* relief. *See Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*, 51 F. Supp. 3d 937, 950 (E.D. Cal. 2014) ("declaratory relief operates prospectively); *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009) (granting summary judgment where plaintiff sought "declaratory relief only to address 'past wrongs'"). Moreover, Tenant's declaratory relief claim is largely predicated upon the same issues presented in Landlord's breach of contract claim. (*See* State Court Complaint at 18.) And for the reasons described above, the Court rules in favor of Landlord on those issues.

\\
\\
\\
\\
\\

## V. CONCLUSION

For the foregoing reasons, Landlord's motion for summary judgment on its breach of lease claim and Tenant's declaratory relief claim is **GRANTED**. Tenant's motion for summary judgement is **DENIED**. The Court will enter judgment for Landlord in the amount of $796,525.47.

DATED: October 20, 2021

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE